UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 06-161 (HHK) |
| | : | |
| KEVIN D. AYERS, | : | Motions Hearing:   September 25, 2006 |
| | : | |
| Defendant. | : | |
| _____ | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE AND STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion to Suppress Evidence and Statements. In support of its opposition, the Government relies on the following points and authorities and such points and authorities as may be cited at a hearing on the motion.

**FACTUAL BACKGROUND**

On May 10, 2006, officers of the Metropolitan Police Department, including Officer Christopher Petz, went to the 2700 block of Fourteenth Street, N.W., in Washington, D.C., to execute a Superior Court arrest warrant on Defendant, Kevin D. Ayers. While driving through the block, Officer Petz and his colleagues saw Defendant Ayers entering a liquor store. The officers followed Defendant Ayers into the store and attempted to arrest him. Defendant Ayers resisted, telling the officers: "I just got home, I ain't going back." After a struggle, Defendant Ayers was handcuffed. An unidentified man then entered the store and asked after Defendant Ayers's well-being. Defendant Ayers replied: "Nah motherfucker, why you let them do me like this? You should've come in here and knocked one of these fuckers out. I would've done that shit for you."

Defendant Ayers was searched incident to arrest at the Metropolitan Police Department's Third District cellblock. On Defendant Ayers's person, the searching officers found a key chain bearing the Enterprise rental car company logo. Written on the back of the key chain was a description of a vehicle (a beige Ford Taurus with tag number 3BLC78); attached to it was a car key and several door keys. Later that same day, Officer Jeffrey Labofish, one of the officers who had arrested Defendant Ayers, took possession of the personal property found on Defendant Ayers in order to catalogue it. Officer Labofish noticed the car key and gave it to Officer Petz, asking him to try to find the car described on the key chain.

That afternoon, Officer Petz returned to the 2700 block of Fourteenth Street, N.W., where he discovered a beige Ford Taurus bearing tag number 3BLC78 in a parking lot near the liquor store where Defendant Ayers was arrested. Beginning at the front driver's side window, Officer Petz looked into each of the car's windows. Through the front passenger side window and the front windshield, Officer Petz noticed a plastic bag containing a white rock-like substance between the two front seats. Suspecting that the substance in the bag was cocaine base, commonly referred to as crack, Officer Petz opened the car door with the key seized from Defendant Ayers. A closer visual inspection confirmed that the bag appeared to contain crack. Officer Petz then requested assistance from United States Secret Service crime scene technicians, who found that the top of the bag was stuck in the center console, with the lower portion of the bag hanging below the console. Inside the console, the technicians discovered a Washington, D.C. driver's license bearing Defendant Ayers's name and photograph and $600 in United States currency.

In addition, a search of the Ford Taurus revealed a Motorola cell phone on the driver's side floorboard and a cordless Uniden house phone in the center console area. Officers also found an

Enterprise car rental form indicating that an individual named Tyneka Blango had rented the Ford Taurus on May 6, 2006; a car seat; and a child's backpack. Officers subsequently obtained a Superior Court warrant to search the Motorola cell phone and the Uniden house phone for "telephone numbers and any data contained therein." From the cell phone, officers ascertained the phone number assigned to the phone, which enabled them to obtain the name of the subscriber ("Greg Jones") and a log of incoming and outgoing calls from May 2, 2006, through May 10, 2006. No information was recovered from the house phone. Defendant Ayers now moves to suppress all of the tangible evidence and statements in this case.

## ARGUMENT

**I.      The Search of Defendant Ayers's Person Was a Proper Search Incident to Arrest.**

It is well established that once police officers lawfully arrest a suspect, they may conduct a full search of his person. *Chimel v. California*, 395 U.S. 752, 763 (1969); *United States v. Wider*, 951 F.2d 1283, 1286 (D.C. Cir. 1991). In order to be lawful, an arrest must be supported by probable cause. *See United States v. Broadie*, 452 F.3d 875, 881 (D.C. Cir. 2006) ("The arrest was valid . . . if the officer had probable cause to believe [the defendant] had committed any crime."). Where officers arrest a suspect based on a warrant they did not themselves seek, they "are entitled to assume that the officers who did obtain the warrant offered the magistrate the information requisite to support an independent judicial assessment of probable cause." *United States v. Hewlett*, 395 F.3d 458, 461 (D.C. Cir. 2005) (quoting *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)) (internal quotation marks omitted). In this case, Officer Petz arrested Defendant Ayers based on a warrant obtained the day before by another officer. The warrant clearly established probable cause to believe that Defendant

Ayers had committed the D.C. Code offense of carrying a pistol without a license.[1/] The subsequent search of Defendant Ayers's person therefore was proper. Accordingly, the car key found during that search should not be suppressed.

## II.    The Search of the Ford Taurus Was Consistent with the Fourth Amendment.

The search of the Ford Taurus and the subsequent seizure of cocaine base, money, Defendant Ayers's driver's license, and Enterprise paperwork were consistent with the Fourth Amendment. In *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971) (plurality opinion), a plurality of the Supreme Court held that the "plain view" doctrine permits the warrantless seizure of private possessions where three requirements are satisfied. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. *Id.* at 465-68. Second, the officer must discover incriminating evidence "inadvertently," that is, the officer may not "know in advance the location of [certain] evidence and intend to seize it." *Id.* at 470. Third, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.* at 466.

Applying these rules, the Supreme Court held in a plurality opinion in *Texas v. Brown*, 460 U.S. 739 (1983) (plurality opinion), that an officer who stopped a driver at a license checkpoint

---

[1/]    The affidavit in support of the arrest warrant stated that a civilian witness had reported that a person known to it as "Kevin Lee Ayers" or "SK" had entered its apartment while it was in the shower. The witness noticed a duffle bag in the room with "SK." Another civilian witness reported that it had seen "SK" enter the apartment with a key, carrying a black and white backpack. This witness stated that "SK" opened the backpack to reveal a revolver with a scope on it. A consent search of the apartment turned up a backpack containing a Smith and Wesson .41 caliber revolver, loaded with six .41 caliber cartridges, which subsequently was test-fired and found operable. Both witnesses identified a photograph of Defendant Ayers as "SK," the person who had entered the apartment with a gun. Further investigation also revealed that Defendant Ayers previously had been convicted of carrying a pistol without a license.

properly seized a party balloon that dropped from the driver's hand. In that case, a police officer stopped Clifford Brown at a checkpoint and asked him for his license. At approximately the same time, the officer shined his flashlight into the car and saw an opaque party balloon, knotted about a half-inch from the tip, drop from Brown's hand. *Id.* at 733. The officer then positioned himself so that he could see into the glove compartment when Brown opened it. Inside the compartment were several small plastic vials, some loose white powder, and an open bag of party balloons. Brown told the officer that he had no license in his possession. The officer then had Brown step out of the car, reached into the vehicle, and picked up the balloon that had fallen from Brown's hand, which turned out to contain heroin. The officer testified at trial that he knew from previous experience that narcotics frequently were packaged in such balloons. *Id.* at 734.

The Supreme Court concluded that the warrantless seizure of the balloon was proper. First, the Court ruled, the officer lawfully looked into Brown's car:

> The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason [the police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [the officer] to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment.

*Id.* at 740. Second, the Court held that *Coolidge*'s requirement that it be "immediately apparent" that the items viewed were evidence of a crime, contraband, or otherwise subject to seizure was met because the officer "possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance." *Id.* at 742. The officer, the Court said, had testified that he was aware, both from his participation in previous narcotics arrests and from discussion with other officers, that balloons

tied in the manner of the one possessed by Brown frequently were used to carry narcotics. *Id.* at 742-43. Finally, the Court ruled that the "inadvertence" element of the plain view doctrine was satisfied because "although the officers no doubt had an expectation" that some of the cars they stopped would contain illegal drugs, there was "no suggestion that the roadblock was a pretext whereby evidence of narcotics violations might be uncovered in 'plain view' in the course of a check for driver's licenses." *Id.* at 743-44.

*Brown* governs this case. Officer Petz did nothing more than look into the windows of the Ford Taurus, something that any passerby could have done. The Government expects to show at a hearing on this matter that Officer Petz is familiar with the appearance of cocaine base as a result of his extensive training and experience, and that he had probable cause to believe, upon seeing the bag in the Ford Taurus, that it contained crack cocaine. And although Officer Petz and his colleagues may have expected that they might find contraband in the Ford Taurus, there is no evidence "that they had anything beyond this generalized expectation." *Id.* at 744. The plain view doctrine thus justifies the warrantless seizure of the crack cocaine from the passenger compartment of the Ford Taurus. *See, e.g.*, *United States v. Castellanos*, 731 F.2d 979, 984 (D.C. Cir. 1984) (concluding that seizure of bag containing a white powdery substance in suspect's pocket that became visible when suspect exited car was proper under plain view doctrine); *United States v. Gibson*, 636 F.2d 761, 763-64 (D.C. Cir. 1980) (upholding search of purse into which officers had witnessed suspect placing packets containing a white substance). Accordingly, the crack cocaine in this case should not be suppressed.

Once Officer Petz saw the crack cocaine, he had probable cause to believe that the Ford Taurus contained contraband, and therefore could search it without a warrant. *See, e.g.*, *New York*

*v. Class*, 475 U.S. 106, 112-14 (1986); *Carroll v. United States*, 267 U.S. 132, 160-62 (1925). The scope of a warrantless search of an automobile extends to "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). In this case, the object of the search was narcotics, which could have been concealed in any number of places within the car, including the center console, the glove compartment, and the trunk. Upon finding crack cocaine in the passenger compartment, the officers were entitled to search all of these areas. *E.g.*, *United States v. (Monte F.) Brown*, 374 F.3d 1326, 1329 (D.C. Cir. 2004) (concluding that presence of tools of crime on passenger seat gave "rise to a likelihood . . . that the driver . . . placed the fruits of his crime in the trunk"), *cert. denied*, 543 U.S. 1174 (2005); *United States v. (Rocky Lee) Brown*, 334 F.3d 1161, 1170 (D.C. Cir. 2003) (ruling that gun in passenger compartment "strongly supports" probable cause for search of trunk for guns, ammunition, and narcotics), *cert. denied*, 541 U.S. 954 (2004); *United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir. 1997) (holding that even a personal-use amount of drugs in passenger compartment gave rise to probable cause to search trunk for more narcotics). Therefore, none of the evidence found in the Ford Taurus should be suppressed.

**III.   Defendant Ayers's Statements Were Not Elicited in Violation of the Fifth Amendment and Should Not Be Suppressed.**

Defendant Ayers also moves to suppress statements made at or about the time of his arrest in this case. As the officers attempted to arrest Defendant Ayers in a liquor store on Fourteenth Street, he blurted out, "I just got home, I ain't going back." After the officers handcuffed Defendant Ayers, a civilian third party, apparently an associate of Defendant Ayers, entered the store and asked him if he was all right. Defendant Ayers responded: "Why you let them do this shit to me? You was

supposed to come in here and knock one of these fuckers out. I'd have done that shit for you." Finally, after Defendant Ayers was told that crack cocaine, cash, and his driver's license had been found in the Ford Taurus, he threatened to kill the officers. Defendant Ayers now seeks to suppress these statements on the ground that they were elicited before he waived his *Miranda*[2/] rights. This contention is meritless.

Defendant Ayers's argument is specious. *Miranda* is implicated only when two circumstances are both present: the defendant is in custody *and* under interrogation. If a suspect is in custody, but volunteers a statement in the absence of interrogation, there is no *Miranda* issue even if the suspect was not given any advice of rights. *Miranda*, 384 U.S. at 478; *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Interrogation includes not only direct questioning, but "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. Because Defendant Ayers was under arrest at the time that he made the statements that he now seeks to suppress, the Government concedes that he was in custody. But as the evidence will show, Defendant Ayers made the statements that he had just come home and was not going back and that he was going to kill the officers spontaneously, not in response to any questioning from law enforcement. Defendant Ayers's remark to his associate was a reply to a question from a civilian third party, not to any "words or actions on the part of the

---

[2/]    384 U.S. 436 (1966).

police." *Miranda* does not apply in this situation.[3/] Accordingly, Defendant Ayers's motion to suppress his statements should be denied.

---

[3/]   Defendant Ayers does not explicitly claim that his statements were involuntary. In any event, the evidence will show that his statements were made voluntarily. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972) (holding that in order to use a defendant's statements at trial, the prosecution must show by a preponderance of the evidence that they were voluntary). The test for voluntariness is whether, under the totality of the circumstances, "coercive police activity" has "overborne" a suspect's "will." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). In making this determination,

> a district court must examine "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed.2d 854 (1973). Relevant factors include: the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.

*United States v. Rodney*, 956 F.2d 295, 297 (D.C. Cir. 1992). The Government expects to show at a hearing on this matter that Defendant Ayers's will was not overborne. Defendant Ayers identifies no coercive police activity, and the circumstances of his statements do not suggest that they were the product of coercive police activity, or were in any other way involuntary.

**CONCLUSION**

WHEREFORE, Defendant Ayers's Motion to Suppress Evidence and Statements should be denied.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney


By: _____
     JESSIE K. LIU
     Assistant United States Attorney
     D.C. Bar No. 472845
     555 Fourth Street, N.W., Room 4649
     Washington, D.C. 20530
     (202) 514-7549

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Government's Opposition to Defendant Ayers's Motion to Suppress Evidence and Statements was served by the Electronic Case Filing system and first-class United States mail, postage prepaid, on counsel for Defendant:

        Mitchell M. Seltzer, Esquire
        717 D Street, N.W.
        Suite 310
        Washington, D.C. 20004

this nineteenth day of September, 2006.

        _____
        JESSIE K. LIU
        Assistant United States Attorney